US DISTRICT COURT INDEX SHEET











FIREMANS FUND INS

STITES

LMM
3:90-CV-389
*1068*
*P/A*

1   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    David E. Bocan (State Bar No. 114657)
2   A. J. De Bartolomeo (State Bar No. 136502)
    Andrew G. Dulaney (State Bar No. 154391)
3   444 Market Street, Suite 2700
    San Francisco, California 94111-5332
4   Telephone:   (415) 399-1800
    Facsimile:   (415) 391-1968
5
    Attorneys for Plaintiff
6   ALLSTATE INSURANCE COMPANY

7   **MOWER, KOELLER, NEBEKER, CARLSON & HALUCK**
    Richard P. Edwards (State Bar No. 74358)
8   225 Broadway, 21st Floor
    San Diego, CA  92101
9   Telephone:   (619) 233-1600
    Facsimile:   (619) 236-0527
10
    Attorneys for Plaintiff
11  FIREMAN'S FUND INSURANCE COMPANY

12  **EVEN, CRANDALL, WADE, LOWE & GATES**
    Maria M. Rullo (State Bar No. 87542)
13  Michael J. Sarrao (State Bar No. 184871)
    7700 Irvine Center Drive, Suite 700
14  Irvine, California 92618
    Telephone:   (714) 753-1000
15  Facsimile:   (714) 753-1039

16  Attorneys for Plaintiff
    STATE FARM FIRE & CASUALTY COMPANY
17

18                **UNITED STATES DISTRICT COURT**

19                **SOUTHERN DISTRICT OF CALIFORNIA**

20  FIREMAN'S FUND INSURANCE COMPANY )   Case No. 90-0389-B (M)
    and ALLSTATE INSURANCE COMPANY,  )
21                                   )   **MEMORANDUM OF POINTS AND**
                 Plaintiffs,         )   **AUTHORITIES IN SUPPORT OF MOTION**
22                                   )   **FOR SUMMARY JUDGMENT ON**
         v.                          )   **PLAINTIFFS' FIRST CLAIM FOR RELIEF**
23                                   )
    LYNN STITES, et al.,             )   Date:  May 27, 1997
24                                   )   Time:  10:30 a.m.
                 Defendants.         )   Place: Courtroom 2, before the
25                                   )          Honorable Rudi M. Brewster
                                     )
26                                   )   Trial Date:   September 23, 1997
27  ─────────────────────────────── )

28

**ORIGINAL**

FILED

APR 2 5 1997

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _L. Mitchell_ DEPUTY

# Table of Contents

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     Collateral Estoppel Bars Relitigation Here of the Issues Determined in the Criminal Proceedings Against Stites and Noyer . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    The Defendants' RICO and Mail Fraud Convictions and the Evidence Presented with This Motion Conclusively Establish All Elements of Plaintiffs' RICO Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The Defendants' RICO and Mail Fraud Convictions Conclusively Demonstrate that the Alliance was an Enterprise, that the Defendants and Their Confederates Conducted the Affairs of the Alliance Through a Pattern of Racketeering Activity, and that the Alliance's Conduct Caused Injury to Persons Including Plaintiffs in Their Business . . . . . . . . . . . . . . . . . . . . . . 7

        1.    The Alliance Was an Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . 7

            a.    The Defendants Shared a Common Purpose to Defraud Insurers, Including Plaintiffs . . . . . . . . . . . . . . . . . . . . . 8

            b.    The Alliance was an Ongoing Organization with Continuity of Structure and Personnel . . . . . . . . . . . . . . . . . . . . . . . 9

            c.    The Alliance had an Ascertainable Structure Distinct from the Pattern of Racketeering Activity . . . . . . . . . . . . . . . . 9

        2.    Stites and Noyer Conducted the Affairs of the Alliance Through a Pattern of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . 10

        3.    The Defendants' RICO Scheme Caused Injury to Persons Including Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    The Measure of the Injury to Plaintiffs' Business is the Total of All Fees Paid by Plaintiffs in the Willow Ridge, AMGO, and Syndico Litigations, which the Alliance Controlled, Manipulated, and Prolonged . . . . . . . . . . . . . . . 13

        1.    Because the Legal Services Performed by the Alliance in the Underlying Litigations Were Tainted with Fraud and Conflict of Interest, the Alliance is Entitled to No Fees for Those Services . . . 13

        2.    The Necessity of Paying the Fees in the Underlying Litigations Was Proximately Caused by the Alliance's Racketeering Activities . . . . 15

    C.    The Evidence Presented With This Motion Demonstrates That the Alliance's Activities Injured Plaintiffs in Their Business in the Amount of $7,928,615.73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   Stites and Noyer are Jointly and Severally Liable to Plaintiffs for Three Times the Total Amount Paid by Plaintiffs to the Alliance, with Interest on That Trebled Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   Defendant's Affirmative Defenses Are Frivolous . . . . . . . . . . . . . . . . . . . . . . 21

   A.   Plaintiffs' and Plaintiff-in-Intervention's RICO Claim Is Not Barred by the Statute of Limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

   B.   Plaintiffs' RICO Claim Is Not Barred by Unclean Hands . . . . . . . . . . . . . 22

   C.   Plaintiffs Are Not Estopped to Assert Their RICO Claim . . . . . . . . . . . . 22

   D.   Plaintiffs' RICO Claim Is Not Barred by Laches . . . . . . . . . . . . 23

   E.   Plaintiffs Have Not Waived Their RICO Claim . . . . . . . . . . . . . . . . . . . 24

   F.   Plaintiffs' RICO Claim Is Neither Barred by Contributory Negligence Nor Reducible for Comparative Fault . . . . . . . . . . . . . . . . . . . . . . . . 24

   G.   Plaintiffs Have Standing to Pursue Their RICO Claim . . . . . . . . . . . . . . . 25

   H.   No Fraud or Conspiracy to Defraud Bars Plaintiffs' RICO Claim . . . . . . . 25

   I.   Plaintiffs' RICO Claim Is Not Barred by Noyer's Supposed Good Faith . . 26

   J.   RICO Is Not Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   K.   Noyer Is Not Entitled to a Set-Off . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   L.   Plaintiffs' RICO Claim Is Not Barred by Consent . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## Table of Authorities

**Cases**

County of Oakland by Kuhn v. City of Detroit, 776 F.Supp. 1211, (E.D.Mich. 1991) . . . . . . . . . 6

Haskel, Inc. v. Superior Court (Aetna Cas. & Sur. Co.), 33 Cal.App.4th 963, 976 n. 9, 39 Cal.Rptr.2d 520, 526 n. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16

Lancaster Com. Hosp. v. Antelope Vly. Med. Group, Inc., 940 F.2d 397 (9th Cir. 1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992) . . . . . . . . . . . . . . . . . 8, 26

Southern Pac. Comm. Co. v. Am. Tel. & Tel. Co., 740 F.2d 1011, 1014 n. 2 (D.C. Cir. 1984) . . . 5

Administrator U.S Steel & Carnegie, 17 F.3d 1386 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 16

Aetna Cas. and Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1560 (1st Cir. 1994) . . 6, 11, 12, 19, 20

Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 44 Cal.Rptr.2d 352 (1995) . . . . . . . . . . . 25

Amato v. Mercury Cas. Co., 18 Cal.App.4th 1784, 23 Cal.Rptr.2d 73, (1993), rev. denied (1994)  16

AMPAT/Midwest v. Illinois Tool Works, 896 F.2d 1035 (7th Cir. 1990) . . . . . . . . . . . . . . . . . 24

American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 5

Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985) . . . . . . . . 5

Anderson v. Janovich, 543 F.Supp. 1124, 1130 (W.D.Wash. 1982) . . . . . . . . . . . . . . . . . . . . 5, 6

Asbestos Claims Facility v. Berry & Berry, 219 Cal.App.3d 9, 267 Cal.Rptr. 896, (1990), rev. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . 19

Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271 (9th Cir. 1988) . . . . . . . . . . . 20, 21

Bieter Co. v. Blomquist, 848 F.Supp. 1446 (D.Minn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Blecher & Collins, P.C. v. Northwest Airlines, Inc., 858 F.Supp. 1442, (C.D.Cal. 1994) . . . . . . 14

Cal Pak Delivery, Inc. v. UPS, Inc., 52 Cal.App.4th 1, 15, 60 Cal.Rptr.2d 207 (1997) . . . . . . 13, 14

Center Cadillac v. Bank Leumi Trust Co., 808 F.Supp. 213 (S.D.N.Y. 1992) (citations omitted), aff'd, 99 F.3d 401 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Chamberlain Mfg. Corp. v. Maremont Corp., 1993 WL 535420 at *6 (N.D.Ill. 1993) . . . . . . . . 25

Chisolm v. Transouth Financial Corp., 95 F.3d 331 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 16

City of Chicago Heights, Ill. v. Lobue, 914 F Supp. 279, 284 (N.D.Ill. 1996) . . . . . . . . . . . . . . 20

1   Civille v. Bullis, 209 Cal.App.2d 134, 25 Cal.Rptr. 578 (1962) . . . . . . . . . . . . . . . . . . . . . .   25

2   Clark v. Millsap, 197 Cal. 765, 242 P. 918 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

3   Coplin v. Conejo Valley U.S.D., 903 F.Supp. 1377 (C.D.Cal. 1995) . . . . . . . . . . . . . . . .   24

4   Corporacion Insular de Seguros v. Reyes Munoz, 849 F.Supp. 126 (D. Puerto Rico 1994) . . 6, 7, 9,
                                                                                                      19

5
    Day v. Rosenthal, 170 Cal.App.3d 1125, 217 Cal.Rptr. 89, rev. denied (1985), cert. denied, 475 U.S.
6   1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

7   Denton v. Smith, 101 Cal.App.2d 841, 226 P.2d 723, (1951) . . . . . . . . . . . . . . . . . . . . . .   14

8   FHM Const., Inc. v. Village of Canton Housing Authority, 779 F.Supp. 677 (N.D.N.Y. 1992) . .   22

9   First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co., 163 F.R.D. 574 (N.D.Cal. 1995) . . . . . . .   16

10  Fleischauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . .   7, 20

11  Forsyth v. Humana, Inc., 99 F.3d 1504 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . .   15

12  Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324 (10th Cir. 1984) . . . . . . . . . . . . . . . .   24

13  GN Mortgage Corp. v. Fidelity Nat'l Title Ins Co., 21 Cal.App.4th 1802, 27 Cal.Rptr.2d 47, 5, rev.
    denied (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25
14
    Goldstein v. Lees, 46 Cal.App.3d 614, 120 Cal.Rptr. 253, 255 (1975), hg. denied. . . . . . . . . 13, 14
15
    Greycas v. Proud, 826 F.2d 1560 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24
16
    Grimmett v. Brown, 75 F.3d 506, (9th Cir. 1996),
17  cert. dismissed, ___ U.S. ___, 115 S.Ct. 2521, 136 L.Ed.2d 674 (1997) . . . . . . . . . . . . . .   7, 21

18  Groves v. Prickett, 420 F.2d 1119 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

19  Hamid v. Price Waterhouse, 51 F.3d 1411 (9th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 709,
    133 L.Ed.2d 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
20
    Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303 (9th Cir. 1992), cert. denied, 507 U.S. 1004,
21  113 S.Ct. 1644, 123 L.Ed.2d 266 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

22  In Blue Cross and Blue Shield of Mich. v. Kamin, 876 F.2d 543 (6th Cir. 1989) . . . . . . . . . . .   12

23  In re Chilton, 8 Cal.App.3d 34, 86 Cal.Rptr. 860 (1970) . . . . . . . . . . . . . . . . . . . . . . . .   21

24  In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549-1550 n. 3 (11th Cir.)
    (quoting 2 A. Freeman, A Treatise of the Law of Judgments §677 (5th ed. 1925) at 1429-1430),
25  cert. denied, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) . . . . . . . . . . . . . . . . . .   5

26  In re Nat'l Mortg. Equity Corp. Mortg. Pool Certs. Sec. Lit., 636 F.Supp. 1138, 1156 (C.D.Cal.
    1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22
27
    Jeffry v. Pounds, 67 Cal.App.3d 6, 136 Cal.Rptr. 373 (1977) . . . . . . . . . . . . . . . . . . . . . .   14
28

1  Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1283-1284 (9th Cir. 1986) . . . . . . . . . 5

2  Moore v. Kayport Package Exp., Inc., 885 F.2d 531 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 25

3  Newport Nat'l Bank v. United States, 556 F.Supp. 94 (D.R.I. 1983) . . . . . . . . . . . . . . . . 22

4  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979) . . . 5

5  Pillsbury, Madison & Sutro v. Lerner, 31 F.3d 924 (9th Cir. 1994) . . . . . . . . . . . . . . . . 15

6  Reddy v. Litton Indus., Inc., 912 F.2d 291 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 25

7  Resolution Trust Corp. v. Stone, 998 F.2d 1534 (10th Cir. 1993) . . . . . . . . . . . . . . . . . 19

8  Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 5

9  Rockwell Int'l Corp. v. Superior Court (Aetna Cas. and Sur. Co.), 26 Cal.App.4th 1255, 32
   Cal.Rptr.2d 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10 Roma Const. Co. v. aRusso, 96 F.3d 566 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 22

11 Rubin v. O'Koren, 621 F.2d 114 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 22

12 S.E.C. v. Bilzerian, 29 F.3d 689, (D.C.Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 6

13 Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) . . . . . . 7, 25

14 Sun Sav. and Loan Ass'n v. Dierdorff, 825 F.2d 187 (9th Cir. 1987) . . . . . . . . . . . . . . 7, 10

15 Terry v. Bender, 143 Cal.App.2d 198, 214, 300 P.2d 119 (1956) . . . . . . . . . . . . . . . . . 14

16 Thompson v. Price, 251 Cal.App.2d 182, 59 Cal.Rptr. 174, (1967) hg. denied. . . . . . . . . 14, 21

17 Ticor Title Ins. Co. v. Florida, 937 F.2d 447 (9th Cir. 1991) . . . . . . . . . . . . . . . . . 19

18 UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465 (9th Cir. 1994) . . . . . . . . . . . . . . 23

19 United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc., 89 F.3d 574, (9th Cir.
   1996), cert. denied, ___ U.S. ___, 117 S.Ct. 945, 136 L.Ed.2d 834 . . . . . . . . . . . . . . . 14

20

21 United States v. Amwest Surety Ins. Co., 54 F.3d 601 (9th Cir. 1995) . . . . . . . . . . . . . . 24

22 United States v. Bennett, 44 F.3d 1364 (8th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 2279 and
   2285 and 116 S.Ct. 98, 132 L.Ed.2d 282 and 833 and 133 L.Ed.2d 52 (1995) . . . . . . . . . . . 10

23 United States v. Biasucci, 786 F.2d 504 (2d Cir.), cert. denied, 479 U.S. 827, 107 S.Ct. 104 and 107,
24 93 L.Ed.2d 54 and 56 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25 United States v. Blinder, 10 F.3d 1468 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 9

26 United States v. Dischner, 974 F.2d 1502, 1509 n. 4 (9th Cir. 1992), cert. denied, 507 U.S. 923, 113
   S.Ct. 1290, 122 L.Ed.2d 682 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27 United States v. Feldman, 853 F.2d 648 (9th Cir. 1988),
28 cert. denied, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989) . . . . . . . . . . . . . . . 8

United States v. Kragness, 830 F.2d 842 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

United States v. Lemm, 680 F.2d 1193 (8th Cir. 1982),
cert. denied, 459 U.S. 110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983) . . . . . . . . . . . . . . . 8, 9

United States v. Mason, 26 F.3d 134 (9th Cir. 1994) (table) 1994 WL 266102,
cert. denied, ___ U.S. ___, 115 S.Ct. 524 (1994) and 919 (1995), 130 L.Ed.2d 429 and 799 . . 3, 7-12, 14, 15, 26, 27

United States v. Peters, 962 F.2d 1410 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8, 26

United States v. Riccobene, 709 F.2d 214 (3d Cir.), cert. denied, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Scotto, 641 F.2d 47 (2d Cir. 1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Stites, 56 F.3d 1020, 1022 (9th Cir. 1995),
cert. denied, ___ U.S. ___, 116 S.Ct. 967, 133 L.Ed.2d 888 (1996) . . . . . . . . . . 3, 8, 10-14, 27, 28

United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981),
cert. denied, 493 U.S. 1074 and 494 U.S. 1027, 110 S.Ct. 1122 and 1473,
107 L.Ed.2d 1029 and 108 L.Ed.2d 611 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

United States v. Uzzell, 648 F.Supp. 1362, 1363-1364 (D.D.C. 1986) . . . . . . . . . . . . . . . . 6

Wauchope v. United States Dept. of State, 985 F.2d 1407 (9th Cir. 1993) . . . . . . . . . . . . . 23

Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 531 (9th Cir. 1987) . . . . . . . . . 5

**Statutes**

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 1961(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

18 U.S.C. §1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 7

Cal.Civ.Code § 2860(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## SUMMARY OF ARGUMENT

This case presents one of the most outrageous examples of attorney misconduct in the annals of American jurisprudence. Immediately after the issuance of a judicial opinion creating an unusual tripartite relationship among insureds, their liability insurers, and the lawyers who defend the insureds against claims made by third parties, the defendants in this action and their confederates set about twisting that relationship to their own nefarious ends. In the course of that iniquitous conduct, they repeatedly abused the judicial process, committed numerous federal crimes, and contributed to the public contempt which all too often paints the entire legal profession with a broad brush colored by the miscreancies of a relatively few dishonest lawyers. To make matters worse, they also defrauded various insurance companies out of at least fifty million dollars -- yes, $50,000,000.00.

Plaintiff Allstate Insurance Company ("Allstate"), plaintiff Fireman's Fund Insurance Company ("Fireman's Fund") and plaintiff-in-intervention (hereafter, except where distinguishing between the original plaintiffs and the plaintiff-in-intervention is necessary, "plaintiff") State Farm Fire and Casualty Company ("State Farm") (collectively "plaintiffs" or "insurers") are insurers who were defrauded out of millions of dollars in churned and inflated legal fees by a criminal enterprise known as "the Alliance." Defendant Lynn Boyd Stites ("Stites") was the mastermind of the Alliance, and defendant Richard Noyer ("Noyer") was among the participants in the Alliance's criminal activities. Both Stites and Noyer have been convicted under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), and of mail fraud for participating in a criminal scheme to defraud various insurance companies, including plaintiffs, by infiltrating both sides of lawsuits in which the insurers were required to pay their insureds' legal fees and churning those lawsuits for their own profit. Those convictions are final. Noyer has served his sentence, and Stites remains in prison.

Plaintiffs move for summary judgment on their RICO claim. Defendants' convictions collaterally estop them from relitigating most of the elements of that claim. The one element to which collateral estoppel does not apply -- the extent of the damages sustained by plaintiffs -- is abundantly proved by the evidence submitted herewith. Defendants and their confederates defrauded plaintiffs out of $7,928,615.73 in churned and inflated legal fees, and they are jointly and severally liable to plaintiffs for three times that amount -- $23,785,847.19 -- plus interest.

# FACTS

Defendant Stites has been convicted of criminal RICO and of mail fraud for masterminding a network of corrupt attorneys and others who infiltrated various lawsuits and manipulated them for the purpose of defrauding insurance companies out of millions of dollars in churned and inflated legal fees. The jury in his criminal trial found that Stites had defrauded insurers out of fifty million dollars. Defendant Noyer has also been convicted of criminal RICO and mail fraud for his participation in the criminal enterprise masterminded by Stites. Their convictions have been affirmed, and their petitions for certiorari have been denied. The Ninth Circuit Court of Appeals has aptly summarized their crimes:

> This case involved illegal and unethical schemes by a network of Southern California attorneys. Appellants [including Noyer] and their employees and associates, called the "Alliance," defrauded insurance companies of millions of dollars in legal fees through systematic control, manipulation, and prolongation of complex civil litigation. Alliance members knowingly represented adverse interests, financed litigation opponents, shared litigation and office expenses, and paid kickbacks to each other and the clients they represented. Twelve attorneys and six non-attorneys either pled guilty or were convicted of crimes arising from their participation in the Alliance.

> Count 1 of the Indictment (the RICO count) alleged that Appellants participated in a criminal enterprise (the Alliance) through a pattern of racketeering activity. This pattern consisted of numerous mail fraud violations. The Indictment alleged seventy-seven different mailings related to various schemes to defraud through civil litigation. . . . Each litigation encompassed numerous individual lawsuits and generally involved underlying investment deals that turned sour. Civil pleadings served on various Alliance members through the mail constituted the mailings in furtherance of the various litigation schemes. . . .

> . . . Insurance companies sell policies which give rise to a duty to defend their insureds against lawsuits filed against them. . . . [I]nsurance companies no longer ha[ve] the right to select counsel for the insured (under certain circumstances). Instead, the insured now ha[s] the right to choose. These attorneys [are] known as "Cumis" counsel.

> Lynn Stites, the organizer of the Alliance, established a network of law firms over which he had control and maintained a financial interest. Sue Rubin, his administrative assistant, aided him in all aspects of expanding his network of firms. Stites would coordinate the litigation among the defendants' attorneys [including Noyer] who[m] he assigned through intermediaries to various insured defendants. And he controlled, with few exceptions, the plaintiffs' attorneys in these litigations to insure that the case would settle, if at all, only when the insurance companies were no longer willing or required to pay the costs of the Cumis counsel defense.

1   . . . Stites required participating Alliance members to follow three rules: (1) members were not allowed to talk about the cases to anyone;
2   (2) they were not to cooperate in any way with the insurance companies who were required to pay their fees; and (3) they were not to settle a
3   lawsuit without prior authorization from Stites.

4   United States v. Mason, 26 F.3d 134 (9th Cir. 1994) (table) 1994 WL 266102 at **1-**2, cert. denied,

5   ___ U.S. ___, 115 S.Ct. 524 (1994) and 919 (1995), 130 L.Ed.2d 429 and 799 ("Mason") (citable as

6   relevant under the doctrine of collateral estoppel pursuant to Circuit Rule 36-3; copy filed and served

7   herewith for the convenience of the Court).

8   [I]t was established at trial that Stites had been the mastermind of a massive set of professional responsibility and of the criminal
9   law, the more heinous because Stites was a lawyer and at least twelve other lawyers were his principal confederates in carrying out the fraud.
10   The mentality that sees law as a business was here taken to a reductio ad absurdum -- litigation was unconscionably churned to make money for the
11   lawyers. The essence of Stites's scheme, repeated over and over again, was for Stites to control both sides of suits in which insurance companies
12   were paying for counsel, and to assure that the plaintiffs' lawyers would not settle until the insurance companies would no longer pay the costs of
13   defendants' counsel. Stites's network of lawyers was known as "the Alliance." According to the jury verdict in this case, Stites's scams
14   extracted at least $50 million from the insurers in the period 1984 to 1987.

15   United States v. Stites, 56 F.3d 1020, 1022 (9th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 967,

16   133 L.Ed.2d 888 (1996) ("Stites").

17   The three underlying lawsuits at issue on this motion are known as the Willow Ridge,

18   AMGO, and Syndico litigations. Stites and Noyer were convicted of RICO and mail fraud for,

19   respectively, masterminding and participating in "a scheme and artifice defraud various insurance

20   companies and to obtain money by means of false and fraudulent pretenses, representations, and promises

21   through control, manipulation, and prolongation of the Willow Ridge, Amgo, and Syndico litigations."

22   Mason, 1994 WL 266102 at **21. The criminal proceedings against Stites and Noyer were conducted

23   separately, and both criminal actions are concluded. This action has been pending since before Stites and

24   Noyer were indicted, and the chronology of the three actions is as follows:

25   ● Allstate and Fireman's Fund filed their complaint in this action on 28 March 1990.

26   ● Stites and Noyer were indicted on 24 April 1990.

27   ● Noyer answered the complaint, asserting thirteen claims for relief in a counterclaim against

28   Fireman's Fund, on 20 October 1990.

1   •    Stites answered the complaint on 14 December 1990.

2   •    This Court dismissed four of Noyer's claims against Fireman's Fund on 22 February 1991.

3   •    State Farm was granted leave to intervene in this action on 8 May 1991, and its complaint-in-

4         intervention was deemed filed on 22 February 1991.

5   •    Stites answered the complaint-in-intervention on 20 May 1991.

6   •    Noyer was convicted on 25 June 1991 and sentenced on 23 September 1991.

7   •    Noyer answered the complaint-in-intervention, asserting eight claims for relief in a counterclaim

8         against State Farm, on 1 January 1992.

9   •    Fireman's Fund answered Noyer's nine remaining claims against it on 7 February 1992.

10   •    State Farm answered Noyer's eight claims against it on 3 March 1992.

11   •    AMGO was convicted on 7 October 1993 and sentenced on 19 January 1994.

12   •    Noyer's conviction was affirmed on 15 June 1994, and his petition for certiorari was denied on

13         17 January 1995.

14   •    Stites's conviction was affirmed on 26 May 1995, and his petition for certiorari was denied on

15         20 February 1996.

16 **ARGUMENT**

17      Plaintiffs move for summary judgment on their first claim for relief, a RICO claim under

18 18 U.S.C. §1962(c). Stites and Noyer have been convicted of criminal RICO and mail fraud for engaging

19 in precisely the conduct complained of here. Those convictions conclusively establish every element of

20 plaintiffs' RICO claim, except the extent of plaintiffs' damages. The evidence submitted with this motion

21 demonstrates those damages. Because the Alliance infiltrated the underlying litigations, whether the

22 conduct of the other persons mentioned herein was also criminal -- some were convicted, some pled

23 guilty, some were not charged, some were acquitted, and one died before trial -- is immaterial: The

24 Alliance, including Stites and Noyer, defrauded the insurers by manipulating the underlying litigations,

25 so Stites and Noyer are jointly and severally liable for all fees paid by the insurers in those litigations,

26 trebled, with interest. The convictions and other evidence also demonstrate that the affirmative defenses

27 asserted by Stites and Noyer are meritless. There are no genuine issues of fact to be tried, and plaintiffs

28 are entitled to judgment as a matter of law.

1   I.    **Collateral Estoppel Bars Relitigation Here of the Issues Determined in the Criminal Proceedings Against Stites and Noyer**

2

3    Collateral estoppel, also known as issue preclusion, "prevents relitigation of all 'issues of

4   fact or law that were actually litigated and necessarily decided' in a prior proceeding," Robi v. Five

5   Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988) (quoting Americana Fabrics, Inc. v. L & L Textiles, Inc.,

6   754 F.2d 1524, 1529 (9th Cir. 1985) and Segal v. American Tel. & Tel. Co., 606 F.2d 842, 845 (9th Cir.

7   1979)), including all issues that were "'by necessary implication adjudicated in the first'" action. In re

8   Justice Oaks II, Ltd., 898 F.2d 1544, 1549-1550 n. 3 (11th Cir.) (quoting 2 A. Freeman, A Treatise of

9   the Law of Judgments §677 (5th ed. 1925) at 1429-1430), cert. denied, 498 U.S. 959, 111 S.Ct. 387,

10   112 L.Ed.2d 398 (1990). Collateral estoppel applies when the party to be estopped in the present action

11   is, or is in privity with, the party who litigated and lost the issue in the prior actions. Thus, "a plaintiff

12   may, when appropriate, preclude a defendant from relitigating issues that the defendant litigated and lost

13   against another plaintiff." Southern Pac. Comm. Co. v. Am. Tel. & Tel. Co., 740 F.2d 1011, 1014 n. 2

14   (D.C. Cir. 1984); see also Robi, supra, 838 F.2d at 322; Parklane Hosiery Co. v. Shore, 439 U.S. 322,

15   329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). That is precisely the case here:  Stites and Noyer

16   litigated and lost these issues -- whether the Alliance was an enterprise, whether they conducted the

17   affairs of that enterprise, whether they conducted those affairs through a pattern of racketeering activity,

18   and whether that activity caused injury to persons including plaintiffs -- in the criminal actions prosecuted

19   against them, and they are estopped to litigate them again.

20    Collateral estoppel applies when the plaintiffs in the later action could not join the earlier

21   actions and the defendants in the earlier actions had a full and fair opportunity to litigate the issues.

22   Parklane, supra, 439 U.S. at 330-331, 99 S.Ct. at 651-652.  The defendants had a full and fair

23   opportunity to litigate the issues in the prior actions if (1) no lesser standard of proof was required in

24   those actions than in the present action, Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522,

25   531 (9th Cir. 1987), and (2) the defendants in the prior actions had an incentive to litigate those issues

26   vigorously. Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1283-1284 (9th Cir. 1986).  Here,

27   the plaintiff insurers were obviously "unable to join the prior criminal action[s] instituted by the United

28   States." Anderson v. Janovich, 543 F.Supp. 1124, 1130 (W.D.Wash. 1982).  The defendants' crimes

1 | have already been proved to a higher standard than applies in this action, because although predicate acts

2 | under the RICO statute are "criminal offenses to which the beyond-reasonable-doubt burden of proof

3 | applies, a plaintiff in a civil RICO action may prove these acts by a preponderance of the evidence."

4 | Aetna Cas. and Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1560 (1st Cir. 1994).  Just as in Anderson,

5 | supra, Stites and Noyer "had an extremely high incentive to litigate vigorously in the prior action since

6 | they faced long prison terms if convicted."  543 F.Supp. at 1130.

7 |      "A criminal conviction is conclusive proof and operates as an estoppel on defendants as

8 | to the facts supporting the conviction in a subsequent civil action.  To apply the principle of estoppel . . .

9 | the trial court in the subsequent civil proceeding must examine the record to determine exactly what was

10 | decided in the criminal proceeding."  United States v. Uzzell, 648 F.Supp. 1362, 1363-1364 (D.D.C.

11 | 1986) (citations omitted); see also County of Oakland by Kuhn v. City of Detroit, 776 F.Supp. 1211,

12 | 1215 (E.D.Mich. 1991).[1]  Holdings of appellate courts in the prior criminal proceedings are conclusive

13 | proof in the subsequent civil proceedings.  S.E.C. v. Bilzerian, 29 F.3d 689, 694 (D.C.Cir. 1994).

14 | Because they have been convicted for the very conduct at issue in this action, Stites and Noyer are

15 | "collaterally estopped from relitigating in this action issues of fact and law previously adjudicated in their

16 | criminal trial[s], which resulted in their conviction[s].  Plaintiff[s] can introduce the criminal conviction[s]

17 | in order to establish the facts and law upon which the conviction[s] were based."  Corporacion Insular

18 | de Seguros v. Reyes Munoz, 849 F.Supp. 126, 132 (D. Puerto Rico 1994).  The convictions and other

19 | evidence establish every element of plaintiffs' RICO claim, so plaintiffs are entitled to summary judgment.

20

21 | **II.   The Defendants' RICO and Mail Fraud Convictions and the Evidence Presented with This Motion Conclusively Establish All Elements of Plaintiffs' RICO Claim**

22 |      The elements of civil RICO which plaintiffs must prove on this motion are identical to

23 | those of the criminal RICO of which Stites and Noyer have already been convicted, except that civil

24 | RICO requires proof of the extent to which plaintiffs were injured in their business or property by the acts

25 | which form the pattern of racketeering activity in which the Alliance was engaged.   The evidence

26 | submitted with this motion abundantly proves that final element.

27

28 |      [1]     The pertinent portions of the record of the criminal actions against Stites and Noyer are attached to the Request for Judicial Notice filed herewith.

1
2
3

**A.**   **The Defendants' RICO and Mail Fraud Convictions Conclusively Demonstrate that the Alliance was an Enterprise, that the Defendants and Their Confederates Conducted the Affairs of the Alliance Through a Pattern of Racketeering Activity, and that the Alliance's Conduct Caused Injury to Persons Including Plaintiffs in Their Business**

4
5
6
7
8
9
10
11

"The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.' 18 U.S.C. §§ 1964(c), 1962(c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3284-3285, 87 L.Ed.2d 346 (1985)." Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996), cert. dismissed, ___ U.S. ___, 115 S.Ct. 2521, 136 L.Ed.2d 674 (1997). Likewise, criminal RICO liability "requires proof of (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sun Sav. and Loan Ass'n v. Dierdorff, 825 F.2d 187, 191 (9th Cir. 1987) (citing Sedima, S.P.R.L. v. Imrex Co., 105 S.Ct. 3275, 3285 (1985))." Mason, 1994 WL 266102 at **26 and

12
13
14
15
16
17

**29. Therefore, the defendants' racketeering convictions conclusively demonstrate that they conducted the affairs of an enterprise (the Alliance) through a pattern of racketeering activity (mail fraud). Moreover, the jury's special finding that Stites derived $50,000,000.00 in income from the Alliance's racketeering activity (Special Verdict of Forfeiture) conclusively demonstrates that such activity caused injury to the insurers, and the insurers defrauded include Allstate, Fireman's Fund,  and State Farm. (Indictment ¶61 at p. 20, ¶87 at p. 31, ¶101 at p. 38.)

18

   **1.**   **The Alliance Was an Enterprise**

19
20
21
22
23
24
25
26
27
28

"An enterprise exists when a group of persons associate together in order to engage in a course of criminal conduct." Corporacion, supra, 849 F.Supp. at 134. "An enterprise must be merely 'an ongoing organization, formal or informal.'" Fleischauer v. Feltner, 879 F.2d 1290, 1297 (6th Cir. 1989) (quoting United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)), cert. denied, 493 U.S. 1074 and 494 U.S. 1027, 110 S.Ct. 1122 and 1473, 107 L.Ed.2d 1029 and 108 L.Ed.2d 611 (1990). "[T]hree characteristics . . . distinguish a RICO enterprise: First, there must be a common or shared purpose that animates the individuals associated with it.  Second, it must be an 'ongoing organization' whose members 'function as a continuing unit'; in other words, there must be some continuity of structure and of personnel.  Third, there must be an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." United States v. Kragness, 830

1    F.2d 842, 855 (8th Cir. 1987) (quoting <u>Turkette</u>, <u>supra</u>, 452 U.S. at 583, 101 S.Ct. at 2528); <u>see also</u>

2    <u>United States v. Feldman</u>, 853 F.2d 648, 656 (9th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1030, 109 S.Ct.

3    1164, 103 L.Ed.2d 222 (1989). Because the existence of a criminal enterprise is an essential element of

4    the crimes of which the defendants have been convicted, those convictions conclusively establish all three

5    characteristics of a RICO enterprise.

6
         a.    **The Defendants Shared a Common Purpose to Defraud**
7               **Insurers, Including Plaintiffs**

8          The common-purpose requirement is satisfied where the defendants "shared . . . the

9    purpose of . . . defraud[ing] one or more insurance companies, and each carried out this purpose to some

10    extent." <u>United States v. Lemm</u>, 680 F.2d 1193, 1199 (8th Cir. 1982), <u>cert. denied</u>, 459 U.S. 110, 103

11    S.Ct. 739, 74 L.Ed.2d 960 (1983). Here, Stites was the "mastermind," <u>Stites</u>, 56 F.3d at 1022, of a

12    "network," <u>id.</u>; <u>Mason</u>, 1994 WL 266102 at **1, of lawyers and others who "defrauded insurance

13    companies of millions of dollars in legal fees through systematic control, manipulation, and prolongation

14    of complex civil litigation." <u>Mason</u>, 1994 WL 266102 at **1. Noyer was "convicted of engaging in a

15    scheme and artifice to defraud various insurance companies and to obtain money by means of false and

16    fraudulent pretenses, representations, and promises through control, manipulation, and prolongation of

17    the Willow Ridge, Amgo, and Syndico litigations," <u>id.</u> at **22, so his conviction proves his "participation

18    in three separate mail fraud schemes (Willow Ridge, Amgo, and Syndico)." <u>Id.</u> at **29. Mail fraud

19    offenses were both the predicate acts involved in the RICO crimes and separate substantive crimes of

20    which Stites and Noyer were convicted.[2] Intent to deceive is an essential element of mail fraud. <u>United</u>

21    <u>States v. Peters</u>, 962 F.2d 1410, 1414 (9th Cir. 1992); <u>Lancaster Com. Hosp. v. Antelope Vly. Med.</u>

22    <u>Group, Inc.</u>, 940 F.2d 397, 404 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1094, 112 S.Ct. 1168, 117

23

24        [2]    Stites was convicted of predicate acts of mail fraud in the Willow Ridge litigation, Indictment at 24-25 and Verdict at 1 (Mailings Nos. 2-10 in Count 1), and of predicate acts and

25    substantive counts of mail fraud in the AMGO and Syndico litigations. Indictment at 35-36 and 53 and Verdict at 2-4 (Mailings Nos. 27-34 in Counts 1 and, variously, 3-7) (AMGO); Indictment at 42-44 and

26    54 and Verdict at 5 (Mailings Nos. 50-52 in Counts 1 and, respectively, 19-21; Mailings Nos. 58-61 in Counts 1 and, respectively, 26-29) (Syndico). Noyer was convicted of a substantive count of mail fraud

27    in the Syndico litigation. Indictment at 42-44 and 54 and Transcript at 9059 (Mailing No. 58 in Count 26). Noyer was also convicted of another unspecified predicate act of mail fraud, which the Court of

28    Appeals affirmed on the basis that the evidence sufficiently established Noyer's participation in each of the litigations at issue on this motion. <u>Mason</u>, 1994 WL 266102 at **30-31.

1  L.Ed.2d 414 (1992). "'RICO imposes no additional mens rea requirement beyond that found in the

2  predicate [acts].'" United States v. Blinder, 10 F.3d 1468, 1477 (9th Cir. 1993) (quoting United States

3  v. Biasucci, 786 F.2d 504, 512 (2d Cir.), cert. denied, 479 U.S. 827, 107 S.Ct. 104 and 107, 93 L.Ed.2d

4  54 and 56 (1986)) (brackets in Blinder). As in Corporacion, supra, "the issue of the scheme of

5  processing false insurance claims in order to steal monies from [the insurers] was necessary to the prior

6  criminal suit. In fact, it was the basis of the mail fraud conviction[s]." 849 F.Supp. at 133. Thus, the

7  substantive and predicate mail fraud convictions conclusively demonstrate that Stites and Noyer shared

8  the specific intent to defraud insurers, including plaintiffs.

9
10
        **b.**    **The Alliance was an Ongoing Organization with Continuity
             of Structure and Personnel**

11  "Continuity of structure exists where there is an organizational pattern or system of

12  authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad

13  hoc, basis." Kragness, supra, 830 F.2d at 856; see also Lemm, supra, 680 F.2d at 1199 ("[s]tructural

14  continuity exists where an unchanging pattern of roles is necessary and is utilized to carry out the

15  predicate acts of racketeering"). "The continuity-of-personnel element involves a closely-related inquiry,

16  in which '[t]he determinative factor is whether the associational ties of those charged with a RICO

17  violation amount to an organizational pattern or system of authority.'" Kragness at 856 (quoting Lemm

18  at 1199). Here, these characteristics cannot be disputed. Stites, "the organizer of the Alliance," Mason,

19  1994 WL 266102 at *2, assigned the various defense attorneys to the various insured defendants, id.; and

20  Noyer, as one of those assigned defense attorneys (Indictment ¶37 at p. 12), assisted Stites in the

21  "control, manipulation, and prolongation of the Willow Ridge, Amgo, and Syndico litigations." Mason,

22  1994 WL 266102 at **21.

23
24
        **c.**    **The Alliance had an Ascertainable Structure Distinct from
             the Pattern of Racketeering Activity**

25  "'The function of overseeing and coordinating the commission of several different

26  predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence

27  requirement.'" Kragness, supra, 830 F.2d at 857 (quoting United States v. Riccobene, 709 F.2d 214,

28  223-224 (3d Cir.), cert. denied, 464 U.S 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983)) (Kragness's

bracketed text omitted). That is exactly the role Stites played here. He coordinated the underlying litigations, he assigned the various defense counsel to the various insured defendants, and he controlled most of the plaintiffs' counsel. Mason, 1994 WL 266102 at **2; see also id. at **27 ("The substitution of [former defendant Koss for former defendant Phipps as] counsel was a necessary move orchestrated by Lynn Stites to continue the Alliance's control of the Amgo litigation."). Indeed, the very "essence of Stites's scheme . . . was for Stites to control both sides of suits in which insurance companies were paying for counsel . . . ." Stites, 56 F.3d at 1022. Noyer was one of the underlings controlled, through the Alliance hierarchy, by Stites: Nonparty "Andrea Verdick . . . assisted defendant LYNN BOYD STITES in the management of the Alliance, and had individual responsibility for the management of various Alliance lawyers who represented defendants in the AMGO and Syndico litigation, including defendant RICHARD NOYER . . . ." (Indictment ¶37 at p. 12.)

### 2. Stites and Noyer Conducted the Affairs of the Alliance Through a Pattern of Racketeering Activity

"[O]ne conducts the activities of an enterprise through a pattern of racketeering activity when . . . the predicate offenses are related to the activities of that enterprise." United States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). "[T]o prove that an individual participated in a[n] enterprise through a pattern of racketeering activity, the [plaintiff] must prove only that the individual 'associated with' the enterprise and that he engaged in two acts of racketeering that were related to the activities of, or affected, that enterprise." United States v. Bennett, 44 F.3d 1364, 1372 (8th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 2279 and 2285 and 116 S.Ct. 98, 132 L.Ed.2d 282 and 833 and 133 L.Ed.2d 52 (1995). "A 'pattern' requires 'at least two acts of racketeering activity' within a ten-year period. 18 U.S.C. § 1961(5)." United States v. Dischner, 974 F.2d 1502, 1509 n. 4 (9th Cir. 1992), cert. denied, 507 U.S. 923, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993). "'Racketeering activity . . . includes the predicate act[s] alleged in this case of mail fraud under 18 U.S.C. § 1341.'" Mason, 1994 WL 266102 at **29 (quoting Sun, supra, 825 F.2d at 191).

Here, each defendant unquestionably engaged in at least two acts of mail fraud "in the period 1984 to 1987." Stites, 56 F.3d at 1022. Stites was convicted of acts of mail fraud in all three churned litigations -- nine acts of mail fraud in the Willow Ridge litigation, eight acts of mail fraud in the

1  AMGO litigation, and seven acts of mail fraud in the Syndico litigation. See note 2, supra. Noyer was

2  convicted of a substantive count of mail fraud in the Syndico litigation and another unspecified predicate

3  act of mail fraud in the course of "violating the RICO statute by participating in the Alliance litigations,"

4  Mason 1994 WL 266102 at **31; see note 2, supra. The defendants were associated with the Alliance:

5  Stites ran it, and Noyer was employed by it. The acts of mail fraud were related to the Alliance's

6  activities: They occurred in the course of the Alliance's "control, manipulation, and prolongation of the

7  Willow Ridge, Amgo, and Syndico litigations." Mason, 1994 WL 266102 at **21.

8          Moreover, the Ninth Circuit has already so held. Noyer challenged his RICO and mail

9  fraud convictions, contending "that the charged mailings underlying the RICO count and mail fraud count

10  were insufficiently linked to the scheme to defraud." Id. at **27. The Court of Appeals rejected his

11  contention, because the mailings at issue "were necessarily created to further the Alliance's scheme to

12  defraud by aiding the defendants in unnecessarily prolonging and manipulating the various litigations."

13  Id. at **28. Noyer also challenged his RICO conviction on a similar ground, alleging "a lack of proof

14  with respect to the pattern of racketeering activity required." Id. at **29. The Ninth Circuit observed

15  that "[i]f the verdict fails to establish the commission of the requisite two acts, the conviction on the

16  RICO count must be vacated," id., but the Court affirmed Noyer's conviction, because the verdict did

17  establish the requisite predicate acts. Id. at **30.[3]

18          The Alliance's insurance fraud schemes, "repeated over and over again," Stites, 56 F.3d

19  at 1022, constitute an unmistakable pattern of racketeering activity. In Aetna, supra -- where an insurer

20  sued insureds, claimants, and body shops, alleging a series of fraudulent claims as a pattern of

21  racketeering activity -- the First Circuit Court of Appeals held that an ongoing succession of acts of

22  insurance fraud abundantly suffices to show the required pattern of racketeering activity:

23              In addition to proof of at least two predicate acts, there must be
                evidence of continuity sufficient to show that the predicate acts constitute
24              a pattern of racketeering activity. Continuity may be established by
                proving that the predicate acts . . . are a regular way of conducting the

25

26          [3]     See also id. at **31: "Noyer again alleges that the evidence was insufficient to find a
    pattern of racketeering activity. . . . [W]e find no merit to this argument. The jury found Noyer guilty
27  . . . and . . . Noyer has failed to demonstrate that any of the uncharged [i.e., not charged as substantive
    counts of mail fraud] mailings upon which the jury might have relied were insufficient. Thus, there is no
28  basis for reversal on this ground."

1  enterprise.  The evidence of the ongoing succession of fraudulent claims
   in this case easily satisfies this requirement.
2

3  43 F.3d at 1561 (citations and internal quotation marks omitted).

4           In Blue Cross and Blue Shield of Mich. v. Kamin, 876 F.2d 543, 545 (6th Cir. 1989), the

5  Sixth Circuit Court of Appeals came to the same conclusion:

6            [I]f the same person owns ten automobiles and fraudulently tries on ten
             different occasions to collect from the insurance company on each car,
7            there would be ten schemes, not one, notwithstanding that the insurance
             company was the victim in each case and the modus operandi of the
8            wrongdoer was the same in each case.  Such facts would support a civil
             RICO claim.
9

10          Aetna and Blue Cross hold that successive fraudulent insurance claims constitute a pattern

11  of racketeering activity even if only one insurer is defrauded; a fortiori, successive fraudulent insurance

12  claims constitute a pattern of racketeering activity when multiple insurers are defrauded.  Here, multiple

13  insurers were defrauded, and each was defrauded successively in more than one of the underlying

14  litigations (Allstate in the Willow Ridge and AMGO litigations, and Fireman's Fund and State Farm in

15  the AMGO and Syndico litigations).  Stites and Noyer conducted the affairs of the Alliance through a

16  pattern of racketeering activity.

17
                    **3.      The Defendants' RICO Scheme Caused Injury to Persons Including
18                            Plaintiffs**

19          The Ninth Circuit has already held that "Stites's scams extracted at least $50 million from

20  the insurers" through a "scheme," of which Stites was the "mastermind" and which was perpetrated by

21  a "network of lawyers . . . known as 'the Alliance.'"  Stites, 56 F.3d at 1022.  Thus, "the victims in the

22  Alliance scheme were the insurance companies who were defrauded of millions of dollars in attorneys'

23  fees."  Mason, 1994 WL 266102 at **7.  Among the insurers defrauded in the Willow Ridge litigation

24  was Northbrook (Indictment ¶61 at p. 20), and Allstate is Northbrook's successor in interest.

25  (Declaration of Rutz ¶1 at p. 1.)  Among the insurers defrauded in the AMGO litigation were Allstate,

26  Fireman's Fund, and State Farm.  (Indictment ¶87 at p. 31.)  Among the insurers defrauded in the

27  Syndico litigation were Fireman's Fund and State Farm.  (Id. ¶101 at p. 38.)

28

**B.    The Measure of the Injury to Plaintiffs' Business is the Total of All Fees Paid by Plaintiffs in the Willow Ridge, AMGO, and Syndico Litigations, which the Alliance Controlled, Manipulated, and Prolonged**

Although the time period covered by the defendants' RICO convictions is "1984 to 1987," Stites, 56 F.3d at 1022, the controlled, manipulated, and prolonged litigations continued.  Allstate paid fraudulent billings submitted by the Alliance in the Willow Ridge and AMGO litigations after 1987, and Fireman's Fund and State Farm paid fraudulent billings submitted by the Alliance in the AMGO and Syndico litigations after 1987.  For two independent reasons, plaintiffs are entitled to recover all of the fees paid to the Alliance in the Willow Ridge, AMGO, and Syndico litigations:  (1) Because the legal services performed by the Alliance in the underlying litigations were tainted with fraud and conflict of interest, the Alliance is entitled to no fees for those services, even if some of them were actually necessary and honestly performed; and (2) the necessity of paying the fees was proximately caused by the Alliance's racketeering activities.  Even if only one of these applied in this case, plaintiffs would be entitled to recover all of the fees paid in the underlying litigations, and here, both reasons apply.

**1.    Because the Legal Services Performed by the Alliance in the Underlying Litigations Were Tainted with Fraud and Conflict of Interest, the Alliance is Entitled to No Fees for Those Services**

The collateral estoppel effect of the convictions extends to all of the payments made by Allstate, Fireman's Fund, and State Farm, because the Alliance's fraud means that the attorneys in the underlying litigations are entitled to **no** fees for defending the insureds.  "It is settled in California that an attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility."  Goldstein v. Lees, 46 Cal.App.3d 614, 618, 120 Cal.Rptr. 253, 255 (1975), hg. denied.  Thus, defendants are liable for the entire amount paid by plaintiffs to the Alliance.  Because the Alliance's billings of legal fees were part -- indeed, the very object -- of the fraudulent schemes, defendants are not entitled to any of the fees:

> "'Fraud or unfairness on the part of the attorney will prevent him from recovering for services rendered; as will acts in violation or excess of authority, and acts of impropriety inconsistent with the character of the profession, and incompatible with the faithful discharge of its duties.'"

Cal Pak Delivery, Inc. v. UPS, Inc., 52 Cal.App.4th 1, 15, 60 Cal.Rptr.2d 207, 215 (1997) (quoting Clark v. Millsap, 197 Cal. 765, 785, 242 P. 918, 926 (1926) (quoting in turn 6 Corp. Jur. 722, 723)); Goldstein,

1  supra, 46 Cal.App.3d at 618, 120 Cal.Rptr. at 255 (quoting Clark); Terry v. Bender, 143 Cal.App.2d

2  198, 214, 300 P.2d 119, 129-130 (1956) (quoting Clark); Denton v. Smith, 101 Cal.App.2d 841, 845,

3  226 P.2d 723, 725 (1951) (quoting Clark).

4      Because "'acts of impropriety inconsistent with the character of the legal profession and

5  incompatible with the faithful discharge of professional duties will prevent an attorney from recovering

6  for his [or her] services," Cal Pak, supra, 60 Cal.Rptr.2d at 215 (quoting Jeffry v. Pounds, 67 Cal.App.3d

7  6, 9, 136 Cal.Rptr. 373 (1977)) (brackets in Cal Pak), an attorney cannot recover "for services, whether

8  valuable or not, performed fraudulently in his own interest and in violation of his fiduciary duties."

9  Thompson v. Price, 251 Cal.App.2d 182, 189, 59 Cal.Rptr. 174, 178 (1967) (citations omitted), hg.

10  denied. The defendants rendered their legal services "in contradiction to the requirements of professional

11  responsibility," Goldstein, supra, 46 Cal.App.3d at 618, 120 Cal.Rptr. at 255, and "fraudulently,"

12  Thompson, supra, 251 Cal.App.2d at 189, 59 Cal.Rptr. at 178:  Their convictions conclusively

13  demonstrate "a massive set of breaches of professional responsibility and of the criminal law, the more

14  heinous because Stites was a lawyer and at least twelve other lawyers were his principal confederates in

15  carrying out the fraud." Stites, 56 F.3d at 1022. Likewise, the defendants performed their services "in

16  [their] own interest," Thompson, supra, 251 Cal.App.2d at 189, 59 Cal.Rptr. at 178:  The essential aspect

17  of the Alliance's activities was that "litigation was unconscionably churned to make money for the

18  lawyers." Stites, 56 F.3d at 1022.

19      Moreover, it has been established that the defendants "knowingly represented adverse

20  interests," Mason, 1994 WL 266102 at **1, and that Stites, through the Alliance, "control[led] both sides

21  of suits in which insurance companies were paying for counsel," Stites, 56 F.3d at 1022. "It is the general

22  rule in conflict of interest cases that where an attorney violates his or her ethical duties to the client, the

23  attorney is not entitled to a fee for his or her services." Cal Pak, supra, 60 Cal.Rptr.2d at 215. Indeed,

24  "California courts have often held that when the ethical violation in question is a conflict of interest

25  between the attorney and the client (or between the attorney and a former client), the appropriate fee for

26  the attorney is zero." United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc., 89

27  F.3d 574, 579 (9th Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 945, 136 L.Ed.2d 834; see also

28  Blecher & Collins, P.C. v. Northwest Airlines, Inc., 858 F.Supp. 1442, 1457 (C.D.Cal. 1994) (quoting

1  Asbestos Claims Facility v. Berry & Berry, 219 Cal.App.3d 9, 27, 267 Cal.Rptr. 896, 906-907 (1990),

2  rev. denied) ("'attorney's claim for fees may not be allowed if it is established that he or she undertook

3  the representation of conflicting interests without the written consent of both parties'").  Because the

4  legal services performed by the Alliance in the Willow Ridge, AMGO, and Syndico litigations were

5  tainted with fraud and conflict of interest, the Alliance is entitled to no fees for those services, even if

6  some of them were actually necessary and honestly performed.[4]

7
8  **2.   The Necessity of Paying the Fees in the Underlying Litigations Was Proximately Caused by the Alliance's Racketeering Activities**

9      "To maintain a claim under RICO, a plaintiff must show not only that the defendant's

10  violation was a 'but for' cause of his injury, but that it was the proximate cause as well.  This requires

11  a showing of a direct relationship between the injurious conduct alleged and the injury asserted.  The

12  plaintiff must show a concrete financial loss." Forsyth v. Humana, Inc., 99 F.3d 1504, 1516-1517 (9th

13  Cir. 1996) (citations omitted); accord Hamid v. Price Waterhouse, 51 F.3d 1411, 1419 (9th Cir. 1995),

14  cert. denied, ___ U.S. ___, 116 S.Ct. 709, 133 L.Ed.2d 664; Pillsbury, Madison & Sutro v. Lerner, 31

15  F.3d 924, 928 (9th Cir. 1994); Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1310 (9th Cir.

16  1992), cert. denied, 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).  The Ninth Circuit has

17  already held that the defendants' racketeering activities "defrauded insurance companies of millions of

18  dollars in legal fees through systematic control, manipulation, and prolongation of complex civil

19  litigation," Mason, 1994 WL 266102 at **1, and it is established that plaintiffs are among the insurers

20  defrauded.  (Indictment ¶61 at p. 20, ¶87 at p. 31, and ¶101 at p. 38.)  Plaintiffs' concrete financial losses

21  are the amounts it paid in response to fraudulent billings submitted by the Alliance.

22      "A proximate cause is not, however, the same thing as a sole cause.  Instead, a factor is

23  a proximate cause if it is a substantial factor in the sequence of responsible causation." (Cox v.

24
25
26      [4]      Plaintiffs do not concede that any legal services performed in any of the underlying litigations were actually necessary or honestly performed.  On the contrary, "Alliance members . . . paid

27  kickbacks to . . . the clients they represented." Mason, 1994 WL 266102 at **1.  As explained in the text, however, whether any services were actually necessary and honestly performed need not be decided

28  on this motion.

1     Administrator U.S Steel & Carnegie, 17 F.3d 1386, 1399 (11th Cir. 1994) (citation and internal quotation

2     marks omitted); accord Chisolm v. Transouth Financial Corp., 95 F.3d 331, 337 (4th Cir. 1996).

3                 Here, it is beyond dispute that plaintiffs' injuries were proximately caused by the Alliance's

4     fraudulent activities, because plaintiffs were induced to pay money in justified reliance on the Alliance's

5     fraudulent billings. As liability insurers, plaintiffs owed to their insureds the duty to defend them against

6     any claim which was potentially covered by their policies. E.g., Amato v. Mercury Cas. Co., 18

7     Cal.App.4th 1784, 1790-1791, 23 Cal.Rptr.2d 73, 76-77 (1993), rev. denied (1994). Therefore, refusing

8     to pay the attorneys' fees in the underlying litigations would have exposed plaintiffs to potential tort

9     liability. E.g., id. at 1793, 23 Cal.Rptr.2d at 78; see also Haskel, Inc. v. Superior Court (Aetna Cas. &

10    Sur. Co.), 33 Cal.App.4th 963, 976 n. 9, 39 Cal.Rptr.2d 520, 526 n. 9 (citation omitted) ("If [the insurer]

11    owes any defense burden it must be fully borne with allocations of that burden among other responsible

12    parties to be determined later."), rev. denied (1995). In these circumstances, plaintiffs' reliance on the

13    billings' representing legal services which were actually necessary and honestly performed -- when in fact

14    defendants were criminally churning the underlying litigation -- was necessarily reasonable. Indeed,

15    because of the nature of the Cumis counsel relationship, plaintiffs' reliance was unavoidable: "[T]he

16    insured and its independent [Cumis] counsel retain fully the right to communicate between themselves

17    in private -- and to shield those communications from the carrier." First Pacific Networks, Inc. v.

18    Atlantic Mut. Ins. Co., 163 F.R.D. 574, 580 (N.D.Cal. 1995); see also Rockwell Int'l Corp. v. Superior

19    Court (Aetna Cas. and Sur. Co.), 26 Cal.App 4th 1255, 1263, 32 Cal.Rptr.2d 153, 158 ("the insured is

20    entitled to independent [Cumis] counsel and to a relationship with that counsel free from the fear of

21    disclosure of privileged communications"), rev. denied (1994). Because "privileged materials relevant

22    to coverage disputes" are shielded from the insurer, Cal.Civ.Code § 2860(d), and because plaintiffs could

23    not decline to pay the fraudulent bills without risking tort liability to the insureds, plaintiffs had no

24    practicable alternative but to rely on the representations made by defendants -- representations of actual

25    necessity and honest performance which are necessarily embodied in every bill for legal services.

26    \\\

27    \\\

28    \\\

1  **C.    The Evidence Presented With This Motion Demonstrates That the Alliance's**
2        **Activities Injured Plaintiffs in Their Business in the Amount of**
       **$7,928,615.73**

3        The defendants' criminal convictions conclusively demonstrate that Allstate was among

4  the Alliance's victims in the Willow Ridge litigation (Indictment ¶61 at p. 20) and the AMGO litigation

5  (id. ¶87 at p. 31), and that Fireman's Fund and State Farm were among the Alliance's victims in the

6  AMGO litigation (ibid.) and the Syndico litigation (id. ¶101 at p. 38).

7        In the Willow Ridge litigation, Allstate paid checks totalling $3,401,880.30 in response

8  to fraudulent billings submitted for the Alliance by Arnold,[5] checks totalling $1,029,659.77 in response

9  to fraudulent billings submitted for the Alliance by Koss,[6] and checks totalling $512,005.60 in response

10  to fraudulent billings submitted for the Alliance by Sternberg.[7] (Declaration of Rutz ¶13 at p. 3, ¶31 at

11  p. 7, and ¶45 at p. 10.)  Thus, in the Willow Ridge litigation, the Alliance defrauded Allstate out of

12  $4,943,545.67.

13        In the AMGO litigation, Allstate paid checks totalling $32,364.50 in response to

14  fraudulent billings submitted for the Alliance by Kent[8] (Declaration of Rutz ¶48 at p. 11), and Fireman's

15  Fund paid checks totalling $69,308.39 in response to fraudulent billings submitted for the Alliance by

16  Kent. (Exhibit A to Declaration of Lolar.)  State Farm paid checks totalling $99,145.36 in response to

17  fraudulent billings submitted for the Alliance by Kent, checks totalling $33,879.75 in response to

18

19

20

21        [5]    Arnold "received a salary from defendant LYNN BOYD STITES who, in reality, owned
22  defendant ALAN ARNOLD's law firm, known as the Law Offices of Alan Arnold. Defendant ALAN
     ARNOLD represented defendants in the Willow Ridge litigation [and] the Syndico litigation . . . ."
23  (Indictment ¶39 at p. 12.)  Arnold's participation in those lawsuits continued at least through July of
     1988. (Declaration of Kent ¶24 at p. 4 and ¶31 at p. 5.)

24        [6]    Koss "split all receipts from the insurance companies with defendant LYNN BOYD
     STITES. Defendant LEWIS KOSS represented defendants in the Willow Ridge litigation . . . and in the
25  AMGO litigation." (Indictment ¶42 at p. 13.) Koss's participation in those lawsuits continued at least
     through July of 1988. (Declaration of Kent ¶19 at p. 4 and ¶40 at p. 6.)
26
           [7]  Sternberg "funneled money from defendant LYNN BOYD STITES to attorney Alan Hersch,
27  and represented defendants in the Willow Ridge litigation . . . ." (Indictment ¶52 at pp. 16-17.)

28        [8]  Kent's participation in the Alliance's activities is set forth in his Declaration.

1  fraudulent billings submitted for the Alliance by Waisbren,[9] checks totalling $58,357.22 in response to

2  fraudulent billings submitted for the Alliance by Phipps,[10] checks totalling $50,191.98 in response to

3  fraudulent billings submitted for the Alliance by Noyer, and checks totalling $183,697.11 in response to

4  fraudulent billings submitted for the Alliance by Radomile.[11]  (Declaration of Neverman ¶11 at p. 3.)

5  Thus, in the AMGO litigation, the Alliance defrauded Allstate out of $32,364.50, Fireman's Fund out

6  of $69,308.39, and State Farm out of $425,271.42.

7           In the Syndico litigation, Fireman's Fund paid checks totalling $192,216.49 in response

8  to fraudulent billings submitted for the Alliance by Banks,[12] checks totalling $46,879.88 in response to

9  fraudulent billings submitted for the Alliance by Dezes,[13] checks totalling $96,225.67 in response to

10  fraudulent billings submitted for the Alliance by Ficht,[14] checks totalling $148,342.77 in response to

11  fraudulent billings submitted for the Alliance by Noyer, checks totalling $21,850.20 in response to

12  fraudulent billings submitted for the Alliance by Ozzello, and checks totalling $74,859.83 in response to

---

[9]  Waisbren "agreed to split receipts from the insurance companies with defendant LYNN BOYD STITES.  Defendant STEVEN WAISBREN represented defendants in the AMGO and Syndico litigation[s]."  (Indictment ¶48 at p. 15.)

[10]  Phipps "received financial support from defendant LYNN BOYD STITES to fund the opening and operation of her law firm and received clients from defendant LYNN BOYD STITES. . . . KATHLEEN PHIPPS received a salary from defendant LYNN BOYD STITES who, in reality, owned defendant KATHLEEN PHIPPS' law firm, known as the law offices of Kathleen Phipps.  Defendant KATHLEEN PHIPPS represented defendants in the Willow Ridge . . . and AMGO litigation[s]."  (Indictment ¶46 at p. 14.)

[11]  Radomile "received financial assistance from the Alliance for the operation of his law firm, received compensation from the Alliance for being a defendant in the Willow Ridge litigation, and referred the AMGO litigation [and] the Syndico litigation . . . to the Alliance."  (Indictment ¶58 at p. 18.)

[12]  Banks "received financial support from defendant LYNN BOYD STITES to fund the opening and operation of his law firm . . . received clients from defendant LYNN BOYD STITES . . . split receipts from the insurance companies with defendant LYNN BOYD STITES . . . [and] represented defendants in the AMGO and Syndico litigation[s]."  (Indictment ¶51 at p. 16.)

[13]  Dezes (with his partner, Caiafa) "received financial support from defendant LYNN BOYD STITES to fund the operation of their law firm . . . received clients from defendant LYNN BOYD STITES . . . split receipts from the insurance companies with defendant LYNN BOYD STITES . . . [and] represented defendants in the Willow Ridge . . . AMGO and Syndico litigation[s]."  (Indictment ¶47 at p. 15.)

[14]  Ficht "received financial support from defendant LYNN BOYD STITES to fund the opening and operation of his law firm . . . received clients from defendant LYNN BOYD STITES . . . split receipts from the insurance companies with defendant LYNN BOYD STITES . . . [and] represented defendants in the AMGO and Syndico litigation[s]."  (Indictment ¶49 at pp. 15-16.)

fraudulent billings submitted for the Alliance by Waisbren.  (Exhibit A to Declaration of Lolar.)  State Farm paid checks totalling $65,896.23 in response to fraudulent billings submitted for the Alliance by Stites, checks totalling $212,848.62 in response to fraudulent billings submitted for the Alliance by Rucker & Clarkson,[15] checks totalling $305,702.10 in response to fraudulent billings submitted for the Alliance by Kent, checks totalling $322,589.81 in response to fraudulent billings submitted for the Alliance by Dezes, checks totalling $433,106.55 in response to fraudulent billings submitted for the Alliance by Dezes and Caifafa,[16] checks totalling $398,288.74 in response to fraudulent billings submitted for the Alliance by Arnold, and checks totalling $153,883.26 in response to fraudulent billings submitted for the Alliance by Radomile.  (Declaration of Neverman ¶12 at p. 3.)  Thus, in the Syndico litigation, the Alliance defrauded Fireman's Fund out of $583,810.34 and State Farm out of $1,892,315.41.

All told, the Alliance defrauded Allstate out of $4,957,910.17 in the Willow Ridge and AMGO litigations, the Alliance defrauded Fireman's Fund out of $653,118.73 in the AMGO and Syndico litigations, and the Alliance defrauded State Farm out of $2,317,586.83 in the AMGO and Syndico litigations -- a grand total of $7,928,615.73.

### III.  Stites and Noyer are Jointly and Severally Liable to Plaintiffs for Three Times the Total Amount Paid by Plaintiffs to the Alliance, with Interest on That Trebled Amount

"The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern."  Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 451 (9th Cir. 1991). "Under 18 U.S.C. §1964(c) (1984), plaintiff[s are] entitled to receive treble damages," Corporacion, supra, 849 F.Supp. at 134, with interest on the trebled amount.  Aetna, supra, 43 F.3d at 1552.  All participants in the Alliance are jointly and severally liable for the RICO damages, Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1081 (6th Cir. 1990); Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1549 n.17 (10th Cir. 1993), because the nature of RICO so requires:

---

[15]  "In 1987, attorney Robert Clarkson and attorney Fred Rucker left Stites Professional Law Corporation, founded their own law firm, and thereafter, paid to defendant LYNN BOYD STITES a percentage of the money they received from insurance companies in connection with their representation of various insured defendants . . . in the Willow Ridge litigation, in the AMGO litigation, [and] in the Syndico litigation . . . ."  (Indictment ¶44 at pp. 13-14.)

[16]  See note 13, supra.

1

2

3

4

5

6

> Finally, the district court also erred in instructing the jury to award damages against each defendant separately and individually.  Although there is little direct law on this point, there are numerous RICO criminal forfeiture cases which indicate that the nature of the RICO offense mandates joint and several liability.  See [criminal cases]; see also Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 272 (9th Cir. 1988) (civil RICO liability assessed joint[ly] and severally); . . . . Defendants all participated in the "enterprise" responsible for the RICO violations; awarding damages separately between each plaintiff and defendant is inconsistent with the nature of the injury appellants inflicted . . . .

7

Fleischauer, supra, 879 F.2d at 1301.

8

9

10

11

Stites and Noyer cannot escape liability for all damages caused by the Alliance by asserting that they retained only a portion of the proceeds of the Alliance's racketeering activity.  On the contrary, they are liable for all losses the Alliance inflicted on plaintiffs:

12

13

14

15

> [Defendant] cannot be heard to argue that he should only pay that portion of [plaintiff's] actual financial losses which he kept.  Once again, the focus must be on the loss to [plaintiff] caused by [defendant's] illegal activities, not on his share of the profits derived from those activities.  . . . [Defendant] participated in (or created) the schemes to overbill [plaintiff] in order to line his own pockets, and he remains jointly and severally liable for all the damage [plaintiff] sustained from such overbilling.

16

17

18

City of Chicago Heights, Ill. v. Lobue, 914 F.Supp. 279, 284 (N.D.Ill. 1996).  Regardless of how much of the proceeds of the Alliance's activities Stites and Noyer actually retained, each of them is liable for all of those proceeds.

19

20

21

22

23

24

25

26

27

28

Stites and Noyer also cannot escape liability for all damages caused by the Alliance by asserting that some of the legal services provided by the Alliance in the infiltrated litigations may have been actually necessary and honestly performed.  On the contrary, where a RICO enterprise has defrauded an insurer by false claims, the insurer "as a matter of law . . . is entitled to damages equal to the entire amount of its payments on fraudulent claims, regardless of any portion of the claims that might have been shown to be supportable if no fraudulent enlargement of the claims had occurred."  Aetna, supra, 43 F.3d at 1568 (affirming judgment for total of all claims, trebled, and interest on trebled amount, id. at 1552).  In this case, the amounts of which the insurers have been defrauded were not paid to resolve claims, but to defend insureds.  That distinction, however, makes no difference.  As discussed above, the facts that the Alliance defrauded the plaintiffs through the control, manipulation, and prolongation of the

1  underlying litigations and that they represented adverse interests in violation of their ethical duties mean

2  that the defendants are entitled to no fees at all for their services, "whether valuable or not," Thompson,

3  supra, 251 Cal.App.2d at 189, 59 Cal.Rptr. at 178. Thus, this Court need not determine the reasonable

4  value of the Alliance members' legal services, because their "conflicts of interest rendered [their] services

5  valueless . . . ." Day v. Rosenthal, 170 Cal.App.3d 1125, 1162, 217 Cal.Rptr. 89, 113, rev. denied

6  (1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); accord In re Chilton, 8

7  Cal.App.3d 34, 43, 86 Cal.Rptr. 860, 866 (1970) (attorney knowingly representing adverse interests not

8  entitled to any fee, even if some services did inure to client's benefit.)

9  **IV.    Defendant's Affirmative Defenses Are Frivolous**

10

11       **A.    Plaintiffs' and Plaintiff-in-Intervention's RICO Claim Is Not Barred by the Statute of Limitation**

12       Stites and Noyer allege that plaintiffs' and plaintiff-in-intervention's RICO claim is barred

13  by the statute of limitations. (Stites's Answer ¶383 at p. 78; Noyer's Answer ¶20 at p. 7; Stites's Answer

14  to Complaint-in-Intervention ¶85 at 23.) Not so. The limitation period applicable to plaintiffs' and

15  plaintiff-in-intervention's RICO claim is four years. Agency Holding Corp. v. Malley-Duff & Associates,

16  Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). That period does not begin to

17  run until "a plaintiff knows or should know of the injury that underlies his cause of action" Grimmett,

18  supra, 75 F.3d at 510 -- i.e., until the plaintiff has "actual or constructive knowledge of the fraud,"

19  Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir. 1988) -- which necessarily

20  means that the injury must have already occurred. Plaintiffs and plaintiff-in-intervention suffered injury

21  when they paid the fraudulent bills submitted to them by the Alliance. Allstate paid its first check in the

22  AMGO litigation (to Kent) on 29 April 1988, and in the Willow Ridge litigation (to Arnold) on 9 June

23  1987. (Declaration of Rutz ¶¶14, 46 at p. 4 and 10.) Fireman's Fund paid its first check in the AMGO

24  litigation (to Kent) on 30 July 1986, and in the Syndico litigation (to Ficht) on 26 February 1987.

25  (Exhibit A to Declaration of Lolar.) Plaintiff-in-intervention State Farm paid its first check in the AMGO

26  litigation (to Kent) on 23 February 1987, and in the Syndico litigation (to Radomile) on 3 March 1987.

27  (Declaration of Neverman ¶¶14-15 at p. 4). Plaintiffs Allstate and Fireman's Fund filed their Complaint

28  in this action on 28 March 1990, and State Farm's complaint-in-intervention was deemed filed on

1   22 February 1991. Both complaints were filed fewer than four years after any of the insurers made any

2   of the payments at issue in this action.  The RICO claim at issue on this motion was timely filed by the

3   original plaintiffs and by the plaintiff-in-intervention.

4   **B.   Plaintiffs' RICO Claim Is Not Barred by Unclean Hands**

5   Stites and Noyer allege that plaintiffs' RICO claim is barred by unclean hands.  (Stites's

6   Answer ¶384 at p. 78; Noyer's Answer ¶¶16 and 19 at pp. 6 and 7; Stites's Answer to Complaint-in-

7   Intervention ¶88 at 24.)  Not so.  As a matter of law, "unclean hands is not a valid defense to [plaintiffs']

8   RICO claims." <u>Bieter Co. v. Blomquist</u>, 848 F.Supp. 1446, 1449 (D.Minn. 1994); <u>accord</u> <u>In re Nat'l</u>

9   <u>Mortg. Equity Corp. Mortg. Pool Certs. Sec. Lit.</u>, 636 F.Supp. 1138, 1156 (C.D.Cal. 1986); <u>see also</u>

10  <u>Roma Const. Co. v. aRusso</u>, 96 F.3d 566, 581 (1st Cir. 1996) (Lynch, J., concurring).

11  **C.   Plaintiffs Are Not Estopped to Assert Their RICO Claim**

12  Stites's Third Affirmative Defense reads, in its entirety:  "The complaint of plaintiffs is

13  barred by the doctrine of estoppel."  (Stites's Answer ¶385 at p. 78; Stites's Answer to Complaint-in-

14  Intervention ¶87 at p. 23.)  That allegation is insufficient to put estoppel in issue:  "Estoppel, like fraud,

15  puts the pleader to its mettle by requiring recitation of adequate factual underpinnings for consideration

16  of the applicability of the doctrine; mere conclusions and puffery will not suffice." <u>Newport Nat'l Bank</u>

17  <u>v. United States</u>, 556 F.Supp. 94, 97 (D.R.I. 1983) (granting motion to dismiss on ground of statute of

18  repose despite plaintiff's claim of estoppel, because plaintiff asserted no facts supporting claim); <u>accord</u>

19  <u>FHM Const., Inc. v. Village of Canton Housing Authority</u>, 779 F.Supp. 677, 682 (N.D.N.Y. 1992)

20  (granting motion to dismiss estoppel claim where plaintiff did not "enumerate adequate factual

21  underpinnings for consideration of the applicability of the doctrine of estoppel"); <u>see also</u> <u>Rubin v.</u>

22  <u>O'Koren</u>, 621 F.2d 114, 117 (5th Cir. 1980) ("the claimant must plead with particularity the

23  circumstances and elements supporting the defense" of estoppel), <u>reh'g granted on other grounds</u>, 644

24  F.2d 1023 (5th Cir. 1981).  By failing to plead his estoppel claim with the requisite particularity, Stites

25  has waived it.

26  Noyer has likewise waived the estoppel defense against Allstate by failing to plead it with

27  particularity.  Noyer's Fifth Affirmative Defense alleges that plaintiffs' RICO claim is barred by estoppel

28  arising from "their own acts and/or omissions as more fully stated in defendant's counterclaim."  (Noyer's

1   Answer ¶14 at p. 5.)  None of Noyer's thirteen claims for relief is against Allstate, and Noyer's RICO

2   claims against Fireman's Fund have been dismissed by this Court.  With respect to Allstate, Noyer's

3   remaining claims allege nothing but boilerplate conclusions:  Noyer's fraud and promissory-estoppel

4   claims do not identify any representation made by Allstate (Noyer's Answer ¶¶88-96 at pp. 29-31 and

5   ¶¶127-131 at pp. 40-41); his breach-of-contract and bad-faith claims do not allege any contract between

6   Allstate and Noyer (id. ¶¶97-113 at pp. 32-35); his intentional-interference claim does not allege any

7   interference by Allstate (id. ¶¶114-119 at pp. 36-38); his account-stated claim does not allege any account

8   stated in writing by and between Allstate and Noyer (id. ¶¶120-122 at p. 38); his quantum-meruit and

9   unjust-enrichment claims do not allege that he rendered any services to Allstate (id. ¶¶123-126 at p. 39

10  and ¶¶132-136[17] at p. 41); and his declaratory-relief claim does not allege any controversy between

11  Allstate and Noyer (id. ¶¶137-140 at p. 42).  Because Noyer's counterclaim does not allege specific facts

12  giving rise to any estoppel of Allstate to assert its RICO claim, his incorporation of his counterclaim into

13  his estoppel defense cannot save that defense.

14      **D.      Plaintiffs' RICO Claim Is Not Barred by Laches**

15          Stites and Noyer allege that plaintiffs' RICO claim is barred by laches.  (Stites's Answer

16  ¶386 at p. 78; Noyer's Answer ¶15 at p. 6; Stites's Answer to Complaint-in-Intervention ¶88 at p. 24.)

17  Not so.  In the first place, "laches is an equitable defense unavailable in actions at law governed by a

18  statute of limitations."  UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1474 n.3 (9th Cir. 1994)

19  (holding laches inapplicable to actions under LMRA section 301, which are governed by the relevant

20  statute of limitations borrowed from the forum state), cert. denied, ___ U.S. ___, 116 S.Ct. 297, 133

21  L.Ed.2d 203 (1995).

22          Even if laches were available to defendants in this action, they have failed to demonstrate

23  it.  To establish laches, "a party must show (1) there was inexcusable delay in the assertion of a known

24  right and (2) the party asserting laches has been prejudiced."  Wauchope v. United States Dept. of State,

25  985 F.2d 1407, 1411 (9th Cir. 1993) (citations and internal quotation marks omitted).  "For the purposes

26  of a laches defense, prejudice typically refers to the fact that a defendant no longer has witnesses or

27  _____

28      [17] Noyer's Twelfth Claim for Relief consists of three paragraphs, numbered 132, 135, and 136.
    His Answer does not contain any paragraphs numbered 133 or 134.

evidence available to it as a result of the passage of time, or that it has altered its position in reliance on a plaintiff's inaction." Id. at 1412. Here, the availability of witnesses and evidence is largely immaterial, because Stites and Noyer have already been convicted of RICO and mail fraud for engaging in the fraudulent schemes now at issue. Nor is any change in position alleged, and there is no evidence of any.

**E.   Plaintiffs Have Not Waived Their RICO Claim**

Stites and Noyer allege that plaintiffs have waived their RICO claim. (Stites's Answer ¶387 at p. 79; Noyer's Answer ¶13 at p. 5; Stites Answer to Complaint-in-Intervention ¶90 at p. 24.) Not so. "'A waiver is an intentional relinquishment or abandonment of a known right or privilege.'" United States v. Amwest Surety Ins. Co., 54 F.3d 601, 602 (9th Cir. 1995) (quoting Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970)). Plaintiffs have never expressly waived their RICO claim. Nor have plaintiffs ever impliedly waived their RICO claim. Implied waiver requires "'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved," Amwest, 54 F.3d at 603 (quoting Groves, 420 F.2d at 1125-1126), and must be proved by clear and convincing evidence, Coplin v. Conejo Valley U.S.D., 903 F.Supp. 1377, 1383-1384 (C.D.Cal. 1995). Here, there is no evidence of any waiver.   Noyer alleges waiver resulting from plaintiffs' acts as set forth in his counterclaim; but as discussed above, his counterclaim makes no material allegations against Allstate.

**F.   Plaintiffs' RICO Claim Is Neither Barred by Contributory Negligence Nor Reducible for Comparative Fault**

Sites and Noyer allege that plaintiffs' RICO claim is barred by contributory negligence or reducible for comparative fault. (Stites's Answer ¶389 at p. 79; Noyer's Answer ¶17 at pp. 6-7; Stites's Answer to Complaint-in-Intervention ¶90 at p. 24.) Not so. It is the universal rule that contributory negligence is not a defense to fraud, because fraud is an intentional tort. Thus, contributory negligence is, as a matter of law, likewise not a defense to a RICO claim:

> Defendants' Fourth Defense is apparently some form of contributory negligence/assumption of the risk. Neither is a viable defense to a claim for breach of contract or fraud. See, e.g., Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1337 (10th Cir. 1984) (not a defense to breach of contract or intentional tortious conduct including fraud); AMPAT/Midwest v. Illinois Tool Works, 896 F.2d 1035, 1041 (7th Cir. 1990) ("There is no defense of contributory negligence to an intentional tort, including fraud."); Greycas v. Proud, 826 F.2d 1560, 1562 (7th Cir. 1987) (contributory negligence is not a defense to an intentional tort such

as fraud), <u>cert. denied</u>, 484 U.S. 1043 (1988); [citation].  <u>See</u> <u>also</u> Prosser
& Keaton, <u>The Law of Torts</u> 462 (5th ed. 1984); Restatement (Second)
of Torts, §§ 481, 482 (1965).  Because a RICO violation involves
intentional conduct, contributory negligence is not a viable defense to
such a claim either.

<u>Chamberlain Mfg. Corp. v. Maremont Corp.</u>, 1993 WL 535420 at *6 (N.D.Ill. 1993) (copy filed and

served herewith for the convenience of the Court).

       The adoption in many jurisdictions, including California, of comparative fault to supplant

contributory negligence has not changed this rule:  Just as "'contributory negligence' . . . [was] not a

defense to the intentional tort of fraud," <u>Civille v. Bullis</u>, 209 Cal.App.2d 134, 138, 25 Cal.Rptr. 578, 581

(1962), so too "comparative negligence does not vitiate fraud." <u>GN Mortgage Corp. v. Fidelity Nat'l</u>

<u>Title Ins Co.</u>, 21 Cal.App.4th 1802, 1809 n. 5, 27 Cal.Rptr.2d 47, 52 n. 5, <u>rev. denied</u> (1994), <u>abrogated</u>

<u>on other grounds</u> <u>Alliance Mortgage Co. v. Rothwell</u>, 10 Cal.4th 1226, 44 Cal.Rptr.2d 352 (1995).

Thus, comparative fault is likewise no defense to the intentional tort of fraud committed by participants

in a RICO enterprise in furtherance of a RICO scheme and, hence, no defense to the RICO claim either.

**G.**      **Plaintiffs Have Standing to Pursue Their RICO Claim**

       Noyer alleges that plaintiffs lack standing to pursue their RICO claim.  (Noyer's Answer

¶10 at p. 4.)  Not so.  A RICO "plaintiff '. . . has standing if . . . he has been injured in his business or

property by the conduct constituting the violation.'" <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 294 (9th

Cir. 1990) (quoting <u>Sedima</u>, <u>supra</u>, 473 U.S. at 496, 105 S.Ct. at 3285), <u>cert. denied</u>, 502 U.S. 921, 112

S.Ct. 332, 116 L.Ed.2d 272 (1991).  As discussed above, plaintiffs have been injured in their business

in the amount of $7,928,615.73 by the Alliance's fraudulent activities; therefore, plaintiffs have standing

to pursue their RICO claim.

**H.**      **No Fraud or Conspiracy to Defraud Bars Plaintiffs' RICO Claim**

       Noyer alleges that plaintiffs defrauded him and conspired to do so, and he incorporates

his counterclaim into those allegations.  (Noyer's Answer ¶¶11-12 at pp. 4-5.)  Federal Rule of Civil

Procedure 9(b) "requires that the pleader state the time, place, and specific content of the false

representations as well as the identities of the parties to the misrepresentation." <u>Moore v. Kayport</u>

<u>Package Exp., Inc.</u>, 885 F.2d 531, 541 (9th Cir. 1989).  As discussed above, however, Noyer's

1  counterclaim contains no such allegations about Allstate. The only allegation against Allstate pertaining

2  to a conspiracy is that Allstate is one of an unspecified number of "insurance companies . . . who

3  unlawfully, knowingly and willfully did combine, conspire, confederate and agree together, with each

4  other and others, to facilitate, aid and abet, and conceal, the scheme and artifice to defraud, and to obtain

5  money, services and property by false representations and promises . . . ." (Noyer's Answer ¶94 at

6  p. 31.) This does not adequately plead a conspiracy: "A complaint sounding in fraud may not rely on

7  sweeping references to acts by all or some of the defendants because each named defendant is entitled

8  to be apprised of the facts surrounding the alleged fraud. Plaintiff[] must demonstrate that each

9  Defendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the

10  scheme. General allegations that the defendants 'conspired' in the scheme do not sufficiently attribute

11  responsibility for fraud to each individual defendant." Center Cadillac v. Bank Leumi Trust Co., 808

12  F.Supp. 213, 230 (S.D.N.Y. 1992) (citations omitted), aff'd, 99 F.3d 401 (2d Cir. 1995) (table).

13  **I.   Plaintiffs' RICO Claim Is Not Barred by Noyer's Supposed Good Faith**

14  Noyer "alleges that he is not liable for any damages . . . [because he] acted in good faith

15  without any intent to injure plaintiffs." (Noyer's Answer ¶18 at p. 7.) The legal implications of his

16  argument need not be considered, because his claim of good faith is simply false. He was convicted of

17  mail fraud for his participation in the Alliance, and intent to defraud is an essential element of mail fraud.

18  Peters, supra, 962 F.2d at 1414; Lancaster, supra, 940 F.2d at 404. His intent to defraud the insurers is

19  conclusively established, and it destroys his claim of good faith.

20  **J.   RICO Is Not Unconstitutional**

21  Noyer alleges that the RICO statute is unconstitutional. (Noyer's Answer ¶21 at p. 7.)

22  Again, however, the Ninth Circuit has already ruled against him on this issue: "Appellant Noyer contends

23  that the RICO statute, 18 U.S.C. § 1962(c), is unconstitutionally vague on its face and as applied. . . .

24  We find this contention to be without merit." Mason, 1994 WL 266102 at **20.

25  **K.   Noyer Is Not Entitled to a Set-Off**

26  Noyer alleges that he is entitled to an equitable set-off "far in excess of any damage

27  alleged to have been sustained by plaintiffs." (Noyer's Answer ¶22 at p. 8.) Nowhere does he indicate,

28  however, what Allstate might have done to cause him millions of dollars of damage. On the contrary,

Noyer's fraud and promissory-estoppel claims do not identify any representation made by Allstate (Noyer's Answer ¶¶88-96 at pp. 29-31 and ¶¶127-131 at pp. 40-41); his breach-of-contract and bad-faith claims do not allege any contract between Allstate and Noyer (id. ¶¶97-113 at pp. 32-35); his intentional-interference claim does not allege any interference by Allstate (id. ¶¶114-119 at pp. 36-38); his account-stated claim does not allege any account stated in writing by and between Allstate and Noyer (id. ¶¶120-122 at p. 38); his quantum-meruit and unjust-enrichment claims do not allege that he rendered any services to Allstate (id. ¶¶123-126 at p. 39 and ¶¶132-136 at p. 41); and his declaratory-relief claim does not allege any controversy between Allstate and Noyer (id. ¶¶137-140 at p. 42).

### L.   Plaintiffs' RICO Claim Is Not Barred by Consent

Noyer alleges that plaintiffs' "conduct in reference to the transactions alleged in the Complaint . . . bars recovery against [him] by reason of the defense of consent . . . ." (Id. ¶23 at p. 8.) Nowhere does he allege, however, that Allstate ever consented to anything.

### CONCLUSION

Stites and Noyer have been convicted of RICO and mail fraud for the course of conduct complained of here. Those convictions conclusively demonstrate that Stites and Noyer participated in a criminal enterprise, the Alliance, for the purpose of defrauding insurers, including plaintiffs, of millions of dollars. This "abuse of the judicial system," Stites, 56 F.3d at 1026, was highly successful, netting Stites at least $50,000,000.00. Id. at 1022. A carefully constructed system designed to secure to insureds their full right to be represented at their insurers' expense by counsel of the insureds' choosing was stood upon its head and warped into a scheme by which "litigation was unconscionably churned to make money for the lawyers." Id. Through "a massive set of breaches of professional responsibility and of the criminal law, the more heinous because Stites was a lawyer and at least twelve other lawyers were his principal confederates in carrying out the fraud," id., the Alliance bilked insurance companies out of $7,928,615.73. Nothing in this "insult to the [legal] profession," Mason, 1994 WL 266102 at **21, inured to the benefit of the clients represented by the Alliance members. On the contrary, "[t]he fee churning, over billing, prolongation of litigation, and other abusive activities practiced by the Alliance did nothing to further the cases of their various clients. Only the Alliance participants benefitted." Id.

1    Plaintiffs are entitled to three times the amount of the injury inflicted upon them by the

2  criminal conduct of the RICO enterprise -- $23,785,847.19 -- plus interest on the trebled amount.

3  Plaintiffs respectfully request that this Court do justice by granting plaintiffs' Motion for Summary

4  Judgment in the amount of $23,785,847.19, plus interest. "According to the jury verdict in [Stites's

5  criminal] case, Stites's scams extracted at least $50 million from the insurers," Stites, 56 F.3d at 1022,

6  so anything less than treble damages plus interest would give Stites an unconscionable windfall and leave

7  him, despite his crimes, a fabulously wealthy man.

8

9  Dated:  April 24, 1997

10                              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

11

12                              By_____
                                    David E. Bocan
13                                  A. J. De Bartolomeo
                                    Andrew G. Dulaney

14                                  Attorneys for Plaintiff
                                    ALLSTATE INSURANCE COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Dated: April 24, 1997

**MOWER, KOELLER, NEBEKER, CARLSON & HALUCK**

By: _____

Richard P. Edwards
Attorneys for Plaintiff
FIREMAN'S FUND INSURANCE COMPANY

1

2

3  DATED:   April 24, 1997            EVEN, CRANDALL, WADE, LOWE &
                                      GATES
4

5

6                                     By: _____
                                          MARIA M. RULLO
7                                         MICHAEL J. SARRAO
                                      Attorneys for Plaintiff STATE
8                                     FARM FIRE & CASUALTY COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28